*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY BANASZAK,

      Plaintiff-Appellant,

v

STATE OF MICHIGAN,

      Defendant-Appellee.

UNPUBLISHED
July 20, 2026
9:45 AM

No. 375636
Court of Claims
LC No. 23-000097-MM

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

In this action asserting a taking and inverse condemnation, plaintiff, Anthony Banaszak, appeals as of right the Court of Claims' (COC's) opinion and order denying his motion for summary disposition under MCR 2.116(C)(10), denying summary disposition in favor of defendant, state of Michigan, under MCR 2.116(C)(7), and granting summary disposition in favor of defendant under MCR 2.116(C)(10).[1] We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, a landlord, attempted to evict a tenant, Harold Lee Nielsen, who became violent during the proceedings. The initial attempt was abandoned because of Nielsen's reaction. Instead, the facts were presented to the local prosecutor, and a charge of assault with a dangerous weapon was issued as well as a bench warrant. A subsequent eviction was attempted with a police response from Bay City Public Safety Department, but the response escalated in light of the tenant's actions.

---

[1] Plaintiff also appeals a prior opinion and order granting in part defendant's earlier motion for summary disposition on plaintiff's claim for declaratory relief seeking entitlement to a jury trial. In light of our conclusion that plaintiff cannot establish his claims for inverse condemnation and a taking, we need not address this issue. See *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003) ("[I]t is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds.").

Specifically, the Michigan State Police Emergency Response Team (the state police) caused damage to the property and chemicals were deployed in the course of attempting to remove Nielsen. Plaintiff received insurance proceeds for some of the damage to the property. Thereafter, plaintiff filed a complaint in Bay Circuit Court against defendant and Bay City seeking to recover the rest. Plaintiff raised claims of declaratory and injunctive relief, specifically a demand for a jury trial, taking of private property without just compensation, and inverse condemnation. Defendant removed the action to the COC while the claims against Bay City remained in circuit court. Ultimately, the COC dismissed plaintiff's claim for a jury trial, concluding that plaintiff was not entitled to a jury trial in this property damage context. The COC later granted summary disposition to defendant of plaintiff's taking and inverse condemnation counts, determining that the elements could not be established, and denied plaintiff's motion for summary disposition. It concluded:

> The State's motion for summary disposition under MCR 2.116(C)(10), however, is GRANTED. By its terms, our State Constitution requires just compensation when private property is "taken for public use." Const 1963, art 10, § 2. No public use is present here. The police action here was for the purpose of facilitating [plaintiff's] private use of his rental property, i.e., to free his property of a tenant's leasehold interest for the landlord's private use. It is undisputed that the police arrived at [plaintiff's] property at his approval, if not his request, to assist him in evicting a tenant who had threatened violence to [plaintiff] and to others in connection with eviction attempts. [Plaintiff] was present and even instructed his own employee to cut a hole in the wall of the apartment for the purpose of facilitating the eviction. Simply put, to the extent the government actions resulted in a diminution in value or temporary "taking" of [plaintiff's] property, it was for the purpose of restoring his residence to his private use. There is no genuine question of material fact as to this point. [Plaintiff's] motion for summary disposition under MCR 2.116(C)(10) is DENIED; the State's motion is GRANTED with respect to Count IV of the complaint, which alleges a violation of Article 10, § 2, of Michigan's 1963 Constitution.
>
> A similar result is warranted with respect to Count III, which alleges inverse condemnation. "Inverse condemnation is a de facto taking in which the government effectively takes property absent formal condemnation proceedings." *Gym 24/7 Fitness, LLC v Michigan*, 341 Mich App 238, 261-262; 989 NW2d 844 (2022). This may occur through a government regulation that "effective condemns, or takes, private property for public use 'by overburdening that property with regulations.' " *Dorman v Clinton Twp*, 269 Mich App 638, 646; 714 NW2d 50 (2006). In this situation, the property owner is automatically entitled to just compensation when the owner is deprived of all economically beneficially or productive use of his or her land, or when the "government physically and permanently invades any portion of the property." *Id*. at 646. "[T]he two elements of an inverse condemnation claim are '(1) that the government's actions were a *substantial* cause of the decline of his property's value,' and (2) 'that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property.' " *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 549-550; 688 NW2d 550 (2004) [(citations omitted)].

Here, the record refutes plaintiff's claims. The police did not physically occupy or appropriate [plaintiff's] property for police use or for any public use at all. Nor did the destruction come about as a result of a regulation or as a consequence of the government's construction, maintenance, or failure to maintain property owned by the government for the public benefit. This distinguishes the situation presented here from the situations present in the cases cited in plaintiff's brief. *See, e.g., First English Evangelical Lutheran Church of Glendale v Los Angeles Co*, 482 US 304; 107 S Ct 237; 896 L Ed 2d 250 (1987) (taking alleged as a result of a regulatory ordinance [that] prohibited construction); *Peterman v State Dep't of Natural Resources*, 446 Mich 177; 521 NW2d 499 (1994)[] (state's "unscientific construction and design" of jetties related to the boat launch allegedly caused destruction of plaintiff's beach); *Thom* [*v State Hwy Comm'r*], 376 Mich []608[, 628-629; 138 NW2d 322 (1965)] (change in the road grading resulted in diminution of property).

The situation presented here is also distinct because the police did not permanently invade any portion of plaintiff's property—and certainly, without his permission or request to do so. This removes these claims from the realm of "taking." "A 'taking' for purposes of inverse condemnation means that the government has permanently deprived the property owner of any possession or use of the property without the commencement of formalized condemnation proceedings." *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 454-455; 952 NW2d 434 (2020). The police action here did not permanently deprive [plaintiff] of his property and, certainly, not without legal authority. [Plaintiff] requested police assistance in evicting the tenant for the purpose of freeing his property for his private use. The police took action that they deemed necessary to carry out this purpose and, after the property was returned to plaintiff, he contacted his insurance company and recovered on a claim without governmental interference. It is undisputed that a great deal of the property destruction was caused by the tenant himself who was, apparently, hoarding and struggling with mental health concerns. The tenant threatened violence on numerous occasions, brandishing weapons in the form of knives and a metal rod to the police, and the police made numerous verbal orders to the tenant instructing him to exit the residence before increasing the use of force taken against him, which ultimately had the effect of causing significant damage to the property. Our Court of Appeals has declined to find a taking, even on a theory of inverse condemnation, when the alleged property destruction was authorized for the purpose of saving human lives. *Gym 24/7 Fitness, LLC*, 341 Mich App at 268. Defendant's motion for summary disposition under MCR 2.116(C)(10) is GRANTED; plaintiff's motion for summary disposition is DENIED.

Plaintiff moved for reconsideration, and after direction by the COC, defendant filed a response. The COC denied the motion for reconsideration without any additional analysis of the law on takings and inverse condemnation, concluding there was no palpable error.

## II. ANALYSIS

Plaintiff appeals asserting that the COC erroneously determined that plaintiff agreed with the police response to his tenant's removal when the police escalated the situation without plaintiff's consent. It is alleged that Michigan should adopt the position that property damage committed by the police must be borne by the public at large, not individual property owners. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Girimonte v Liberty Mut Ins Co*, 348 Mich App 768, 773; 19 NW3d 921 (2023). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. The moving party must identify and support the issues to which the moving party contends there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Charter Twp of Pittsfield v Wayne Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). Once the moving party makes and supports its motion the opposing party may not rest on mere allegations or denials in the pleadings but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

In pertinent part, Mich Const 1963, art 10, § 2 states:

Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law. If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law. Compensation shall be determined in proceedings in a court of record.

"When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Gym 24/7 Fitness, LLC v Michigan*, 341 Mich App 238, 259; 989 NW2d 844 (2022) (citation omitted). Additionally, a taking may occur when regulations imposed restrict an owner's ability to use his own property. *Id*. However, a temporary closure of private property caused by governmental orders imposed to address public safety does not result in a taking. *Id*. at 267-268 (closure of a gym facility in response to COVID-19). Although plaintiff alleges a taking, defendant did not take plaintiff's property for a public use and did not impose regulations. Therefore, the COC properly dismissed the action.

In *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 88-90; 445 NW2d 61 (1989), our Supreme Court addressed inverse condemnation and takings:

[T]he State of Michigan recognizes a cause of action for a de facto taking. An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken for public use without the commencement of condemnation proceedings. Under Michigan law, a taking for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of

any possession or use of the property. When such a taking has occurred, the Michigan Constitution entitles the property owner to just compensation for the value of the property taken.

Further, Michigan law also recognizes a cause of action for inverse condemnation in cases, like this one, without a physical taking of property, where it is alleged that the effect of a governmental regulation is to prevent the use of much of plaintiff's property . . . for any profitable purpose. [quotation marks and citations omitted.]

Takings may be temporary and are not different in kind with permanent takings. *Id*. at 90.

"[T]he two elements of an inverse condemnation claim are (1) that the government's actions were a *substantial* cause of the decline of his property's value, and (2) that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 549; 688 NW2d 550 (2004) (quotation marks and citations omitted). In seeking reversal of the COC's decision, plaintiff argues that the trial court erred in concluding that plaintiff called the police to remove Nielsen, his tenant. Plaintiff contends that the factual scenario is actually that he complied with eviction law, but the police learned of the bench warrant and altered the eviction proceeding into a fugitive apprehension that substantially caused the damage to his property. Plaintiff also insinuates that the police took unnecessary action because Nielsen did not have a weapon and simply could not hear the orders directing him to come out because he was under arrest.

But, contrary to plaintiff's assertion, the COC's application of the facts to the law did not solely focus on the police motivation. Rather, the elements of inverse condemnation require that the government's actions were a substantial cause of the decline of the property's value and that the government abused its legitimate powers by taking affirmative action "directly aimed" at the plaintiff's property. *Id*. The COC noted that Nielsen caused substantial decline in the property's value by his mental health conditions, his hoarding, and his barricading of the door. Additionally, contrary to plaintiff's claim, the state police did not abuse legitimate powers by directing their action at the property. Rather, the police were using their authority to apprehend Nielsen. Indeed, at the first attempted service of the eviction, Nielsen purportedly brandished a weapon. A complaint was made and referred to the prosecutor, resulting in the charge of assault with a dangerous weapon and an outstanding warrant.

During the second attempt, plaintiff agreed to the removal of drywall in order to apprehend Nielsen. Nielsen then threw a knife at the police. Regardless of whether the police were mistaken about the presence of a gun, Nielsen did not surrender after the deployment of chemicals in the apartment and home. Again, plaintiff contends that the police overreacted in their response because Nielsen was simply an elderly man with hearing loss. Yet it is difficult to reach plaintiff's conclusion under the circumstances. Nielsen's reaction to the first eviction attempt was to draw a knife. His conduct during the second eviction attempt similarly involved throwing a knife at the police. And then Nielsen failed to surrender after the removal of the drywall, the police presence, and the use of chemicals. Regardless of whether Nielsen could hear the police request, visually the police contact and actions clearly alerted Nielsen of the need to surrender to the authorities.

-5-

And the police motive is not the critical inquiry. Rather, the second element of the inverse condemnation claim requires that the police abuse their legitimate powers by the actions taken against the plaintiff's property. In our view, the COC did not err because the action was not "directly aimed" at the plaintiff's property. *Id*. Instead, the actions taken by police were aimed at causing Nielsen to surrender, and when he did not, aimed at neutralizing the threat that he posed to the safety of the other tenants as well as the police. The trial court did not err in dismissing the inverse condemnation claim.

Takings are comprised of two types, physical and regulatory. *Kemerer v Michigan*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362055), slip op at 13. When a physical taking of private property occurs, it constitutes a categorical taking for which just compensation is required. *Id*. However, a "taking" in the constitutional sense does not occur simply by the destruction of, or injury to property. *Omnia Commercial Co v United States*, 261 US 502, 508; 43 S Ct 437; 67 L Ed 773 (1923). For instance, property may be destroyed to prevent the spread of a fire. *Id*. Further, "[t]here are many laws and governmental operations which injuriously affect the value of or destroy property – for example, restrictions upon the height or character of buildings, destruction of diseased cattle, trees, etc., to prevent contagion – but for which no remedy is afforded." *Id*. at 508-509. Although the Fifth Amendment may prohibit a taking of private property for public use, this has been understood to reference "only a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power." *Id*. at 509-510. "[F]or consequential loss or injury resulting from lawful governmental action, the law affords no remedy." *Id*. at 510.[2]

Plaintiff contends that the COC erred because it determined that the taking was not permanent and that temporary takings are compensable. Plaintiff is correct that takings may be temporary. *Electro-Tech, Inc*, 433 Mich at 90. But the COC properly concluded that the police did not physically "take" plaintiff's property. Instead, the police action was directed at Nielsen, and Nielsen's location, at plaintiff's property, was incidental to their action. That is, if Nielsen had been walking down the street, the police initiated contact, and Nielsen ran into a stranger's home, the police would have engaged in the same tactics. First, an attempt to contact Nielsen through an alternate entry point, an attempt to apprehend Nielsen through the use of chemicals after he threw a knife at officers, an attempt to negotiate a peaceful resolution, and then apprehension through escalated means.

Because plaintiff failed to demonstrate that the police action was directed at the property and a physical taking occurred, the COC did not err in granting defendant's motion for summary disposition of plaintiff's claims. Plaintiff's contention that the COC erred in determining the police motive is not an essential element of a taking or inverse condemnation claim.

Nonetheless, plaintiff contends that this Court should decide an issue of first impression and conclude that police are responsible for the damage caused in apprehending a fugitive. We conclude that plaintiff did not meet the elements of Michigan law to establish a taking or inverse

---

[2] We need not decide what constitutes a consequential destruction or loss. See *Armstrong v United States*, 364 US 40, 48; 80 S Ct 1563; 4 L Ed 2d 1554 (1960).

condemnation.[3]  Rather, it seems that plaintiff seeks an extension of public policy to provide monetary damages when police action causes harm to private property.  We decline plaintiff's request to extend the law through public policy, a role reserved for the Legislature.  See *Upper Peninsula Power Co v Village of L'Anse*, 334 Mich App 581, 605 n 10; 965 NW2d 658 (2020) (When a public policy argument is raised, it is better directed to the Legislature than to this Court.)

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[3] After oral argument, plaintiff filed a "Notice of Supplemental Authority," citing *Baker v City of McKinney*, ___ Fed Appx ___ (CA 5, 2026) (unpublished).  We decline to consider it because our rules require citation to a published opinion when supplemental authority is filed.  See MCR 7.212(H) ("Without leave of the court, a party may file a one-page communication, titled 'supplemental authority,' to call the court's attention to new authority released after the party filed its brief.  Such communication, . . . may not cite unpublished opinion.").  In any event, the decisions of intermediate federal courts are not binding on our appellate courts, even though they may be considered for their persuasive value.  *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).  We conclude that this unpublished opinion is not persuasive, *id.*, and therefore, decline plaintiff's invitation to extend Michigan law, see e.g., *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 283; 696 NW2d 646 (2005).